**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**ANTHONY MOORE #563744**

**V.** **Case No. A-16-CV-165-LY**

**CITY OF AUSTIN, POLICE DEPARTMENT, OFFICER TRAVIS #7257, OFFICER TRAYLOR #7258, AND OFFICER KESSLER #7078**

---

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

The undersigned magistrate judge submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); the Motion to Dismiss filed by the City of Austin (Document No. 13); the Motion to Dismiss filed by Officer Travis, Traylor and Kessler (Document No. 14); Plaintiff's responses (Document Nos. 16-17), Defendants' Motion for Summary Judgment (Document No. 19), Plaintiff's response thereto (Document No. 20) and Plaintiff's affidavit (Document No. 21). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## I. BACKGROUND

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Gist Unit of the Texas Department of Criminal Justice - Correctional Institutions Division. Plaintiff alleges Officers Travis and Traylor tased and beat him for no reason. As a result of the use of force, Plaintiff claims he required surgery. Plaintiff also alleges Officer Kessler filed a false police report, because he failed to report the use of the taser to his supervisors. Plaintiff contends the Austin Police Department and the City of Austin failed to properly and adequately train the officers involved and failed to address the "code of silence." Plaintiff seeks $500,000 in damages for pain and suffering, costs, attorney's fees, and a mediator.

Defendants initially moved to dismiss Plaintiff's claims. The Court converted the motions to dismiss to motions for summary judgment and provided the parties the opportunity to file summary judgment evidence. First, Defendants assert the officers are entitled to qualified immunity. They argue the force used by Defendants Travis and Traylor was objectively reasonable. They explain Officer Traylor deployed his taser because he believed Plaintiff intended to flee, ignored his command to stop, had potentially committed a serious crime, and had a history of violence. With respect to Officer Travis, Defendants assert Travis grabbed Plaintiff's arm and rolled him from his back to his stomach after Plaintiff failed to comply with Officer's Traylor's command to roll over. According to the officers, they ceased any use of force once Plaintiff complied or was otherwise handcuffed. With respect to Officer Kessler, the defendants assert he was not present for any use of force by Officers Traylor and Travis. With regard to Plaintiff's claims against the City, Defendants argue Plaintiff's conclusory allegations fail to identify a custom, policy, or practice that

is lacking at the City. They point out the City cannot be found liable under § 1983 under a theory of respondeat superior.

Defendants' version of the facts varies from Plaintiff's. According to Defendants, on the night of February 19, 2014, all three defendants were assigned to work patrol. Officers Kessler and Travis responded to a 911 call for what was identified as a "sex crimes urgent call." The caller described a naked female screaming she had been sexually assaulted by her boyfriend. The boyfriend was identified as Anthony Moore who lived five houses down from the caller's address. When Officers Travis and Kessler arrived on scene, they made contact with the 911 caller and the victim. Officer Kessler observed the victim was naked but had a blanket wrapped around most of her body. According to Defendants, she appeared to have a swollen left eye and she told Officer Kessler she was in pain. The victim also told the officers her boyfriend, Anthony Moore, had assaulted her and was still at his residence down the street. Emergency medical personnel began to treat the victim at the scene and later transported her to the hospital.

Officer Traylor arrived at the scene later, after he learned Moore had a prior history with assault and had a felony warrant for his arrest due to a parole violation. Upon Traylor's arrival, he and Officer Travis went to locate Plaintiff, and Officer Kessler remained with the victim. Officer Travis knocked on the door to Plaintiff's residence while Officer Traylor walked to the side of the house. Traylor saw Plaintiff walking towards the back door to the house. Officer Traylor called out to Anthony and commanded him to stop. According to Officer Traylor, Plaintiff did not comply with the command and quickened his pace so that he headed towards the screen door at the back of the residence. According to Officer Traylor, he believed Plaintiff was about to enter the residence and barricade himself inside. Based on Plaintiff's reported history with violence, his outstanding

warrant, and the fact he had possibly committed another violent assault that night, Traylor deployed his taser for one five second cycle as Plaintiff opened the screen door to the residence.

According to Defendants, the taser was effective and Plaintiff went to the ground. Traylor ordered Plaintiff to roll to his stomach so he could be handcuffed and detained for questioning related to the assault. When Plaintiff did not comply with the orders to roll on his stomach, Defendants assert Officer Travis got a hold of Plaintiff's arms and rolled him to his stomach and placed him in handcuffs. Officers Travis and Traylor escorted Plaintiff to the front of Officer Travis's patrol car to wait for EMS to treat Plaintiff for possible injury due to the taser deployment. While waiting for EMS, Officer Traylor removed the taser prongs from Plaintiff's back and photographed the impact points. According to Defendants, Plaintiff did not complain of injuries or pain during the incident. EMS treated Plaintiff at the scene before Officer Travis transported him to the Travis County Jail. Defendants assert Officer Kessler did not witness the tasing or handcuffing of Plaintiff. Rather Kessler attempted to speak to Plaintiff about the incident that evening after he had been detained.

All three officers activated their recording equipment before they arrived at the scene. The take down of Plaintiff was not recorded on video, because it occurred in Plaintiff's backyard and the video equipment was on the patrol cars parked in the street. Although the take down cannot be seen on the video, it can be heard on the audio.

In response to Defendants' Motion for Summary Judgment Plaintiff provided his own affidavit. According to Plaintiff, he and the victim moved in with his grandmother in February 2014. On the third day at his grandmother's house, his friend Ali called and asked him to go to a strip club. Plaintiff allegedly declined because the victim was only 19 and he did not want to be placed in a

situation where he was giving her drinks. Plaintiff asserts Ali then called Plaintiff's grandmother and told her Ali had a job for Plaintiff. Because of this, Plaintiff contends he had to go to the strip club because his grandmother would get on to him if he was just sitting around without a job. Plaintiff asserts he was with Ali at a strip club most of the night until he received a text from his aunt telling him "not to put [his] hands on anybody!" Plaintiff indicates the text message alarmed him, so he called his grandmother. Plaintiff's grandmother allegedly informed Plaintiff the victim was "cussing [her] out in [her] house." Plaintiff then allegedly called the victim who denied the accusation and informed Plaintiff she had taken "a whole bunch of pills." Plaintiff claims Ali reluctantly gave Plaintiff a ride to his grandmother's house. Plaintiff entered his grandmother's house through the back door. According to Plaintiff, the victim was naked when he arrived. He allegedly told her to get dressed, so they could talk to his grandmother. He asserts they apologized to the grandmother and informed her they would be out of the house in less than a week.

Later, Plaintiff realized he was out of cigarettes, so he left out of the back door to go to the store. He claims the victim came out behind him naked. Plaintiff allegedly told her she had just gotten into it with his grandmother and the victim knew there were other men who lived at the house who paid his grandmother rent. The victim allegedly told him "this is private property" and hit him on the side of the face with a small brick. According to Plaintiff, the victim then laid down on the lawn chair. Plaintiff claims at this same time he heard someone calling his name, so he went around to the front. He heard his name called again and then the voice said, "police." Plaintiff claims he stopped dead in his tracks and then turned around. Plaintiff alleges the police officer asked why is the girl naked and then asked whether he had sex with her. Plaintiff asserts he tried to explain he had just arrived at the house and that the victim and his grandmother had gotten into an argument.

Plaintiff claims he heard another officer screaming his name. Plaintiff maintains one officer tased him in the chest and another officer tased him in the back. Plaintiff alleges the officer who tased him in the back started kneeing him in his left jaw over and over again as the other officer kicked and punched him with his handcuffs in Plaintiff's back, legs and hand. Plaintiff asserts after taking many knees to his jaw, he finally turned his head so that the back of his head was towards the officer. Plaintiff claims he subsequently passed out. Plaintiff maintains he does not remember being treated by EMS. Plaintiff asserts he was in the county jail for approximately two to three weeks before he requested medical treatment. At that time, Plaintiff asserts the swelling in his jaw had gone down, but he was still walking with a limp due to a sprained ankle. He also asserts he required surgery to repair his pinky finger.

## II. ANALYSIS

### A. Standard Under 28 U.S.C. § 1915(e)

Plaintiff's claims against the Austin Police Department are analyzed pursuant to 28 U.S.C. § 1915(e). An in forma pauperis proceeding may be dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from suit. A dismissal for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible. *Haines v. Kerner*, 404 U.S. 519 (1972). However, the petitioner's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog

the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

1. Austin Police Department

The Austin Police Department is not a legal entity capable of being sued. *See Guidry v. Jefferson County Detention Center*, 868 F. Supp. 189, 191 (E.D. Tex. 1994) (holding that the Jefferson County Detention Center is not a legal entity subject to suit); *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991) (holding that police and sheriff's departments are governmental subdivisions without capacity for independent legal action). Therefore, Plaintiff's claims against the Austin Police Department should be dismissed.

B. Summary Judgment Standard

The remaining defendants move for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 576 (1986)).

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619,

621 (5th Cir. 2000) (internal quotations and citations omitted). Conclusory allegations are not competent summary-judgment proof, and thus are insufficient to defeat a motion for summary judgment. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are also not competent summary-judgment proof. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The nonmovant must go beyond the pleadings and identify specific proof in the record and articulate the precise manner in which that proof supports his claim. *See Wheeler v. B.L. Dev. Corp.*, 415 F.3d 399, 401–02 (5th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324)); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the summary-judgment motion. *Ragas*, 136 F.3d at 458. Doubts will be resolved in favor of the nonmovant, and all justifiable inferences to be drawn from the underlying facts are viewed in the light most favorable to that party. *See Minter v. Great Am. Ins. Co.*, 423 F.3d 460, 465 (5th Cir. 2005); *Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir. 1999).

C. Qualified Immunity

Defendants Travis, Traylor, and Kessler assert they are entitled to qualified immunity. In *Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014), the Fifth Circuit explained:

> Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Once the defendant raises the qualified immunity defense, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment." *Mace*, 333 F.3d at 624 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L. Ed.2d 443 (1989)).

> This court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity." *Freeman*, 483 F.3d at 410. First, this Court must determine "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Id*. "If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* at 410–11. "To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (internal quotations and citations omitted).
>
> The reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S. Ct. 1865.

1. Officer Kessler

The summary judgment evidence clearly shows Officer Kessler was not involved in the use of force against Plaintiff. Plaintiff indicates he is suing Officer Kessler for allegedly filing a false report and failing to mention in the report that Plaintiff had been tased. Plaintiff has not stated a valid constitutional claim against Officer Kessler. Failing to mention in his report that another officer tased the plaintiff does not amount to a constitutional violation. Accordingly, summary judgment should be granted with respect to Officer Kessler.

2. Officers Travis and Traylor

Officers Travis and Traylor do not dispute Plaintiff suffered an injury as a result of the use of force during Plaintiff's arrest. Accordingly, the Court turns to the second and third elements—whether the injuries resulted from the use of force that was clearly excessive and whether that force was objectively unreasonable. As discussed earlier, Plaintiff's version of events is that he stopped when the officer yelled "police." Officer Traylor, on the other hand, maintains Plaintiff

quickened his pace and headed to the screen door at the back of the residence. The audio recorded from Officer Travis's equipment reveals Officer Traylor located Plaintiff at the back of the residence. Officer Traylor is heard saying, "here he is, Anthony, what's happening man?" Exhibit C Video at 11:57:40. Four seconds later, Officer Traylor yelled "Anthony!" and three seconds later "stop right there!" *Id.* at 11:57:44-47. At the same time, the sound of footsteps increased in pace. The taser was deployed approximately a second later. *Id.* at 11:57:48. Plaintiff was repeatedly commanded to roll over on his stomach. *Id.* at 11:57:57-11:58:15. In less than a minute, the officers had Plaintiff in handcuffs and Plaintiff was sitting up shortly thereafter. *Id.* at 11:58:42-11:59:15. The audio supports the officers' assertions that Plaintiff did not comply with the command to stop and quickened his pace to the back door. The audio does not support Plaintiff's allegations that he was beaten after he was tased. Considering the summary judgment proof in the light most favorable to Plaintiff, a reasonable trier of fact could not believe that Traylor's use of the taser was excessive or not objectively reasonable. In addition, a reasonable trier of fact could not believe Traylor's and Travis's alleged actions taken after Plaintiff was tased were excessive or not objectively reasonable. Therefore, the Court concludes that Defendants Officers Traylor and Travis are entitled to qualified immunity.

D. City of Austin

As Plaintiff has failed to establish a constitutional violation, there can be no municipal liability against the City of Austin. Moreover, a political subdivision cannot be held responsible for a deprivation of a constitutional right merely because it employs a tortfeasor; in other words a local government unit cannot be held responsible for civil rights violations under the theory of respondeat superior. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). The standard for holding a local

government unit responsible under § 1983 requires that there be a custom or policy that caused the plaintiff to be subjected to the deprivation of a constitutional right. *Id*; *Collins v. City of Harker Heights, Tex.*, 916 F.2d 284, 286 (5th Cir. 1990), *aff'd*, 503 U.S. 115 (1992). Thus, the City of Austin would violate an individual's rights only through implementation of a formally declared policy, such as direct orders or promulgations or through informal acceptance of a course of action by its employees based upon custom or usage. *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). A single decision made by an authorized governmental decisionmaker to implement a particular course of action represents an act of official government "policy." *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986). Plaintiff failed to identify a policy, practice or custom of the City of Austin that caused a deprivation of his constitutional rights. Accordingly, Plaintiff's claims against the defendants in their official capacities are without merit.

## III. RECOMMENDATION

The undersigned recommends that the District Court dismiss Plaintiff's claims against the Austin Police Department pursuant to 28 U.S.C. § 1915(e), **GRANT** the remaining defendants' Motion for Summary Judgment [#19] and **DISMISS** their Motions to Dismiss [#13-14].

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar

that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

SIGNED this 2nd day of August, 2016.

_____________________________

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE